BRIDGETON NATIONAL BANK, complainant-respondent,

*v.*

COMMERCIAL CASUALTY INSURANCE COMPANY, defendant-appellant.

[Argued May term, 1935. Decided October 9th, 1935.]

*Messrs. Lum, Tamblyn & Fairlie* (by *Mr. Chester W. Fairlie*), for the defendant-appellant.

*Messrs. Hobart & Minard,* for the complainant-respondent.

The opinion of the court was delivered by

BODINE, J.

The Bridgeton National Bank in an accounting suit obtained in chancery a money decree against the Commercial

Casualty Insurance Company, surety for the Eastern States Construction Company lately engaged in building several roads in Pennsylvania.

The bank's claim was predicated upon a protested promissory note in the sum of $10,000 dated September 24th, 1929, purporting to be secured by an assignment of the unpaid balance due the Eastern States Construction Company upon its Clarion-Venango road building contract.

Prior to the giving of this note, the Eastern States had directed the final check, which was afterwards issued, to be sent to it in care of the Pittsburgh office of the Commercial Casualty Insurance Company. This was done. The check was endorsed to the surety company and the proceeds used to pay obligations incurred in the completion of other contracts.

Subsequent to entering into the Clarion-Venango contract, and prior to giving the note above referred to, similar contracts, secured by similar bonds, had been entered into for the Vernon-Hayfield, West Meade township and Indiana county road contracts. One or more of these contracts resulted in a loss and the Commercial, at considerable expense, completed them.

The final settlement on the Clarion-Venango contract was not made until February 10th, 1930. The final checks endorsed by the Eastern States Construction Company were deposited by the Commercial Casualty Insurance Company and disbursed to meet the payments referred to.

The contracts with the commonwealth of Pennsylvania forbade any assignments of moneys to grow due thereon. The Bridgeton National Bank, having no legal right against the commonwealth of Pennsylvania, had a mere equity against the Eastern States Construction Company. The equity was, in fact, subsequent to the rights of the Commercial Casualty Insurance Company for reasons now to be stated.

Under the application and contract for the Clarion-Venango bond there was a specific provision that the Eastern States Construction Company would at all times indemnify the Commercial Casualty Insurance Company and hold and save it harmless from and against any and all liability which the

company might, at any time, sustain by reason of having executed the bond applied for, or by reason of the execution of any other bonds.

There was also an assignment of all moneys due and which might grow due and a provision, "that these covenants * * * shall, at the option of the surety company, be available in its behalf and for its benefit as well concerning the bond or undertaking * * * applied for, as also concerning all other former or *subsequent bonds* and undertakings executed for [the Eastern States Construction Company] * * *."

The provisions indicate that in consideration of the execution of the bond all moneys due and to grow due thereon were specifically assigned and the assignment was for the benefit of the surety company, not only as to the Clarion-Venango bond but also as to all bonds prior or subsequent thereto. Such agreement gave, as before noted, the surety company rights prior to those of the bank. But if the rights of the surety company and bank were only equal, the surety company having obtained the fund and disbursed the same, in accordance with its contract, should not have been disturbed unless the claim of the bank was in equity superior to its rights, which we do not think it was.

The learned vice-chancellor found that the Commercial Casualty Insurance Company had notice of the assignment to the bank shortly after it was made. This notice would in nowise deprive it of its equity unless an estoppel arose. There is nothing in the record to suggest this. Mere notice of a subsequent lien will not deprive a prior lienor of his advantage either in law or in equity.

When the defendant's treasurer endorsed the check for the final payment he was merely fulfilling a long standing company obligation in accordance with a contract, the full benefit of which the defendant had received. No special corporate action would be necessary to make such endorsement valid in equity.

To require the Commercial Casualty Insurance Company to surrender the moneys which it had obtained and applied upon obligations incurred by reason of the Eastern States Construction Company's default, merely because a bank had

in the meantime seen fit to lend money on a subsequent assignment without any inquiry, was inequitable.

The decree will be reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUS-KIRK, HETFIELD, DEAR, WELLS, JJ.   13.